IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 20, 2010


## JAMES W. GENTRY, JR., ET AL. V. TODD CLARK MCCAIN, ET AL.


**Appeal from the Chancery Court for Hamilton County**
**No. 08-0707      Howell N. Peoples, Chancellor**

_____


**No. E2009-01457-COA-R3-CV - FILED MAY 6, 2010**

_____


James W. Gentry, Jr., Margaret A. Gentry ("the Gentrys"), Paul Mallchok, and Lowrance Mallchok[1] sued Todd Clark McCain, Christy McCain ("the McCains"), and the City of Chattanooga ("the City") seeking, in part, a declaration of ownership with regard to a right-of-way known as Manchester Avenue, and a restraining order preventing the McCains from entering the right-of-way. After a hearing, the Trial Court denied the Gentrys' request for a temporary injunction to bar the McCains and the City from the right-of-way and further held that Manchester Avenue had been dedicated, the City had accepted the dedication, the City had never formally abandoned the portion of Manchester Avenue at issue in this case, and that the City held title to the Manchester Avenue right-of-way as a public right-of-way. The Gentrys appeal to this Court claiming that the Trial Court erred in denying them title to the Manchester Avenue right-of-way. We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**


D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.


Hugh P. Garner, Chattanooga, Tennessee, for the appellants, James W. Gentry, Jr., and Margaret A. Gentry.

_____

[1]The Verified Complaint and Petition for Restraining Order was filed on September 3, 2008. On September 4, 2008, Paul Mallchok and Lowrance Mallchok filed a Voluntary Dismissal as to their claims.

John P. Konvalinka, Charles G. Fisher, and Joseph W. Dickson, Chattanooga, Tennessee, for the appellees, Todd Clark McCain and Christy McCain.

Phillip A. Noblett and Patrick P. H. Bobo, Chattanooga, Tennessee, for the appellee, City of Chattanooga.

## OPINION

### Background

The Gentrys, the McCains, and the Mallchoks own real property adjacent to the Manchester Avenue right-of-way. The McCains sought permission from the City for a temporary usage of the right-of-way to install a private drive with future improvement and dedication to the City. The Gentrys opposed the McCains' proposed use and claimed that they owned title to the Manchester right-of-way. The Gentrys filed suit and sought first a Restraining Order and then a temporary injunction preventing the McCains from entering on to the right-of-way and preventing the City from entering on to the right-of-way for any purpose other than to maintain the sanitary sewer located in the right-of-way. The Gentrys also sought to be declared the owners of the property. The Trial Court held a hearing in September of 2008.

Mr. Gentry is an attorney who has been practicing law since 1956. He testified that a plat showing the Manchester right-of-way was filed in 1914 with the City of Riverview[2] and that "the plat, the plat retained, retained the fee to all of the unopened streets." Mr. Gentry admitted that he was aware that the City had put in a sewer line prior to his purchasing his property. There is a sewer manhole in front of the Gentrys' real property and Mr. Gentry admitted that the manhole has been there the entire time he has owned the property.

William E. Cannon, a civil engineer employed by the City, testified that he reviewed the McCains' request for temporary usage of the right-of-way. As part of this review, Mr. Cannon located the 1914 plat. He testified:

I then reviewed the later recordings. Then I took my site visit to verify the current conditions of the site, and reviewed some of the deeds in the area of the right-of-way, and our GIS, Geographic Information System, which shows the

---

[2]The City annexed the area from the City of Riverview in the 1930s.

current condition of the property lines right-of-ways and sanitary sewer, other infrastructure.

Mr. Cannon found no evidence of abandonment of the Manchester Avenue right-of-way "above or below the south line of Center Street." The City had abandoned other nearby areas by ordinance. Mr. Cannon testified that the southern portion of Manchester Avenue, which is the area at issue in this case, was not abandoned by the City in 2003. Mr. Cannon testified that he looked, but located no evidence showing that the portion of Manchester Avenue adjacent to the Gentrys', the Mr. Mallchoks', and the McCains' properties was ever abandoned by the City.

Mr. Cannon testified that a sanitary sewer passes through the Manchester Avenue right-of-way. He reviewed old plats that showed a sanitary sewer in that area in the 1920s. The sanitary sewer in the northernmost section of Manchester Avenue was replaced in 2001. When asked if there had been any repair of or work on the sewer line other than in 2001, Mr. Cannon stated:

> Yes. I believe the manholes, the one at the northern - - well, it's actually very close to Mr. Gentry's western property line, was reworked. And I know during the course of the replacement in the northern portion that some of the paved area was, was somewhat damaged, and some of the paving was repaired at that section of Glenn and Manchester.

Mr. Cannon explained that the Manchester Avenue right-of-way is 40 feet wide. When asked if the McCains' proposed usage of the right-of-way is any different from the usage that the Gentrys have had for years, Mr. Cannon answered: "No. No. It would be exactly the same."

William Calvin Payne, the City Engineer for the City, testified:

> [T]here are sewer improvements that connect the upper - - the upstream end of it is near the intersection where Manchester Avenue is shown on the 1914 plat, and those improvements come all the way down to what is Glenn Street or Glenn Road, also shown as South Street on the 1914 plat. Those sewers did go through, and we do have connections from multiple houses along that line.

When asked about the sewer line, Mr. Payne testified: "A portion of the southern section is shown on a - - on one of our sewer index maps dated 1928, so the construction occurred between 1926 and 1928. So that portion has existed since that time." He further testified: "The sewer line maintenance can vary depending on the situation, anywhere from annual

-3-

cleanings to either more frequent or less frequent TB inspections, and root cleanings and other things that are necessary in maintaining proper flow to the sewage in the lines." When asked how many manholes there are between Glenn Road and the Gentrys' driveway, Mr. Payne testified:

> Well, there's one in Glenn Road, there's another one shown within the area within Manchester Drive that Mr. Gentry uses, and then there's another one further up beyond Mr. Gentry's driveway in the, in the portion of Manchester Avenue. And the remainder of these one, two, three, four manholes are also in the section which has now been abandoned.

Mr. Payne was asked how dedications to the City occur, and he testified: "The, the dedication of the right-of-way occurs as, as property owners or developers come in to subdivide the land and record the plats, and then as, as is necessary for the public improvements." When asked what uses are possible on public right-of-ways in addition to roads, Mr. Payne testified: "We have many right-of-ways within the City that have sanitary sewers, that may have drainage systems installed in them, or may have other public utilities such as power, and telephone cable, or natural gas."

When asked if there had been any action by the City to abandon the area of Manchester Avenue at issue, Mr. Payne testified: "Not on the southern section between Center Street and Glenn Road. The only action we have found is the northern piece between Edgewood Circle and Center Street which happened actually, I believe, in 1951."

Steven Claude Leach, the Administrator of Public Works for the City, testified that there is a manhole in the Manchester right-of-way approximately 50 feet from the intersection of Glenn Road and Manchester Avenue. There is a new manhole cover on this manhole.

Gordon Wood Phillips, who works for the City engineering department on the sewers testified. Mr. Phillips testified that replacement of the existing sewer was done in 2001. At that time, work was done on the Manchester Avenue right-of-way. He explained that when they did the work, they broke up part of the Gentrys' driveway where the manhole was located, and they then re-paved part of it.

After trial, the Trial Court entered its detailed Memorandum and Order[3] on

---

[3] It is apparent from the Trial Court's Memorandum and Order that the Trial Court and the parties tried this action on its merits at the hearing on the temporary injunction. *See* Tenn. R. Civ. P. 65.04(7). The
(continued...)

June 12, 2009 finding and holding, *inter alia*:

This real property dispute involves unique facts. In 1914 a plat of a proposed subdivision (Ex. 19) in the City of Riverview was filed in the Register's Office for Hamilton County, Tennessee. Manchester Avenue was one of the streets designated on the plat of the subdivision and it is shown to be 40 feet wide on the plat. It has never been opened or used as a thoroughfare by the public. In 1930, the City of Chattanooga acquired the City of Riverview. Records maintained by the City of Chattanooga show that a sewer line was placed in the right of way of Manchester Avenue sometime between 1926 and 1928. Evidence presented in this case establishes that the City of Chattanooga made repairs to a portion of said sewer line in 2001, and the sewer line is still in use. While the City of Chattanooga has taken affirmative steps to abandon portions of the platted streets shown on the Ex. 19 plat (See Ex. 25), and has, by ordinance, abandoned part of Manchester Avenue, the City has taken no formal action to abandon the portion of Manchester Avenue in dispute in this case.

\* \* \*

James Gentry testified that he did legal work for Chattanooga Estates Company, the developer of the subdivision containing Manchester Avenue, that Chattanooga Estates Company did not leave unplatted property to the city or state, and that Manchester Avenue was not dedicated to the city. Mr. Gentry testified, at one point, that a man named Ferguson, and at another point, that a man named McDonald acquired all fee to the unopened roads in the subdivision around 1969-70, and that Gentry made claim to Mr. McDonald for the portion of Manchester Avenue that contains Gentry's driveway down to Glen Road. No deeds or other documents were presented to support or substantiate the testimony that Chattanooga Estates Company retained the fee to the streets, or that the fee in the streets was later conveyed to a man named Ferguson or McDonald. While Mr. Gentry claimed that he had asked for part of Manchester Avenue to be assessed to him by the Hamilton County Assessor of Property, Mr. Gentry was unable to state that he has paid taxes on the portion of Manchester Avenue where his driveway is located.

---

[3](...continued)
Gentrys have not claimed any error by the Trial Court in proceeding with this consolidated hearing, and such acquiescence by the Gentrys is clear from their having appealed the Trial Court's Memorandum and Order as a final order subject to appeal.

* * *

The fact that Chattanooga Estates recorded, in the Register's Office for Hamilton County, a subdivision plat in 1914 showing Manchester Avenue as a street is undisputed. It is also undisputed that the Gentrys and the McCains, and their predecessors in title, purchased their properties with reference to the subdivision plat.

* * *

[T]he law in effect at the time the Chattanooga Estates subdivision plat was recorded provided to purchasers of lots in that subdivision the right to use the platted streets and ways, whether accepted by the City or not. Because the McCains and their predecessors in title purchased property in reference to the recorded plat (Ex. 19), the Court finds that the McCains have an easement to use Manchester Avenue as necessary or convenient to enable them to reach a highway, unless the Gentrys can establish that the McCains or their predecessors have abandoned the easement or lost it by adverse possession or acquiescence.

* * *

As for [the Gentrys'] insistence that the City never accepted the dedication of Manchester Avenue, the action of the City in placing and maintaining a sewer line in the right of way of Manchester Avenue constituted an acceptance of the dedication.

* * *

In the case at bar, a sewer line was placed in the right of way of Manchester Avenue in 1926-28 by the City of Riverview, later annexed by the City of Chattanooga. The City has also taken formal action, by ordinance, to abandon other parts of Manchester Avenue not in dispute in this case. Certainly, it would not be necessary to formally abandon a street if it had never been accepted by the City. Under the authorities cited, the Court finds that the City did accept the dedication of Manchester Avenue as a public street.

While there is testimony that a portion of Manchester Avenue has been abandoned, by ordinance of the City of Chattanooga, the portion at issue in this case has not been formally abandoned and the evidence clearly establishes that

the City of Chattanooga has continued to maintain the sewer line with work being done thereon as recently as 2001. Since there has been no abandonment by the City of Chattanooga of the portion of Manchester Avenue at issue herein, the Gentrys may not acquire ownership by adverse possession.

* * *

The Gentrys made an additional claim of title by acquiescence.... In the case at bar, the Gentrys have not shown that there existed any dispute or doubt as to the location of the lines of the parties by the Gentrys, the McCains and the City and/or their predecessors. Nor have the Gentrys established that there existed mutual recognition and knowledge of the line as asserted by Gentrys in Manchester Avenue. The evidence does not prove title by acquiescence.

* * *

Finally, the Gentrys assert that this Court, in a prior lawsuit styled, *Gentry v. Moore*, No. 99-0028, held that the Gentrys own the area of Manchester Avenue in dispute in this litigation. As the Gentrys note in their Verified Complaint and Petition for Restraining Order filed herein: "The Court found that the Gentrys had 'more rights' or a 'higher and stronger' claim than their adversary, David F. Moore. Other persons who may claim an interest were not before the Court. Except for this fact, Mr. Gentry would have been awarded the fee to that part of Manchester Avenue that he claimed." (Ver. Compl. and Pet. for Rest. Ord., para. 7). In this case, two parties not involved in the *Gentry v. Moore* suit have submitted proof and legal authority to rebut the claims made by the Gentrys to exclusive use of Manchester Avenue. The City and the McCains were not parties to the prior suit and are not bound by the findings made in *Gentry v. Moore*.

After finding and holding that a dedication of Manchester Avenue had been made; that the City had accepted this dedication; that the City, therefore, held title to Manchester Avenue; and that the City had not abandoned the portion of the Manchester Avenue right-of-way at issue in this case, the Trial Court denied the Gentrys' request for a temporary injunction.

The Gentrys appeal to this Court.

**Discussion**

Although not stated exactly as such, the Gentrys raise one issue on appeal:

whether the Trial Court erred in finding that the Gentrys do not hold title to the Manchester Avenue right-of-way. The McCains and the City both contend on appeal that the Gentrys failed to raise an issue on appeal as to whether the Trial Court erred in denying a temporary injunction, and have thus waived the ultimate issue. We disagree. As the Trial Court denied the temporary injunction based upon its finding that the Gentrys do not hold title to the Manchester Avenue right-of-way, the issue raised strikes directly at the heart of the matter, even if the other parties would have phrased the issue differently.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As this Court explained in *South Central Tennessee Railroad Authority v. Harakas*:

> A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

*S. Cent. Tenn. R.R. Auth. v. Harakas*, 44 S.W.3d 912, 919 (Tenn. Ct. App. 2000) (quoting Tenn. R. Civ. P. 65.04(2)) (footnote omitted). The *Harakas* Court further explained:

> "The most common description of the standard for preliminary injunction in federal and state courts is a four-factor test: (1) the threat of irreparable harm to plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 4-3(*l*) (1999).

*Id*. at n.6. Thus, if the Trial Court correctly held that the Gentrys do not hold title to the Manchester Avenue right-of-way, the probability that the Gentrys would succeed on the merits would be nil, and the Trial Court would be correct in denying a temporary injunction.

"We review a trial court's decision to issue or not to issue injunctive relief under an abuse of discretion standard." *Eluhu v. HCA Health Services of Tennessee, Inc.*, No. M2008-01152-COA-R3-CV, 2009 Tenn. App. LEXIS 712, at *61 (Tenn. Ct. App. Oct. 27, 2009), *Rule 11 appl. perm. appeal denied April 23, 2010*. As this Court has explained:

> Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:
>
>> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.
>
> *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).
>
> Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id*. When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id*.

*Delapp v. Pratt*, 152 S.W.3d 530, 538 (Tenn. Ct. App. 2004).

The Gentrys argue, in part, that they hold title to the Manchester Avenue right-of-way by virtue of adverse possession. The Trial Court specifically found and held, *inter alia*, that the Gentrys could not establish adverse possession, in part, because "the disputed area of Manchester Avenue was dedicated and accepted by the City and … it has not been abandoned."

As this Court discussed in *West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*:

> To establish a dedicated public right-of-way, there must be a showing

-9-

of an offer of dedication and a public acceptance of the offer. Both the offer of dedication and the public acceptance may be express or implied.

*West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d 365, 366-67 (Tenn. Ct. App. 1989). As this Court stated in *Varallo v. Metro. Gov't of Nashville and Davidson Cty.*: "Where an owner makes a sale of land with reference to a map or plat, in the absence of a manifestation of a contrary intention, he thereby manifests an intention to dedicate the streets and alleys shown thereon to the public use." *Varallo v. Metro. Gov't of Nashville and Davidson County*, 508 S.W.2d 342, 346 (Tenn. Ct. App. 1973) (quoting 26 C.J.S. Dedication § 23). "[W]here a dedication is made, it cannot be lost or forfeited by mere nonuser by the public and is not subject to adverse possession, since the Statute of Limitations will not run against the City as to public rights." *Id.* at 347.

In the case now before us, the Trial Court found that the 1914 plat operated as a dedication and that the City had accepted this dedication by placing and maintaining a sewer line in the Manchester Avenue right-of-way. The evidence does not preponderate against these findings. The Trial Court further found that although Mr. Gentry had asserted that someone named either Ferguson or McDonald had acquired title to the Manchester Avenue right-of-way in 1969 or 1970, there was no documentary evidence which supported this assertion. The Trial Court did find, however, that there was clear documentary evidence, i.e., the 1914 plat, that rebutted the assertion that the fee to the streets had been retained by someone other than the City. The Trial Court further found that the Gentrys, the McCains, and their predecessors in title had purchased their properties with reference to the 1914 plat. As the evidence preponderates in favor of a finding that the 1914 plat operated as a dedication, neither Ferguson nor McDonald could have obtained a fee to the Manchester Avenue right-of-way from someone other than the City in 1969 or 1970.

The Trial Court found that the City had accepted the dedication when it placed and maintained a sanitary sewer line in the Manchester Avenue right-of-way. The evidence does not preponderate against this finding. The Trial Court also found that the portion of Manchester Avenue at issue in this case had never been abandoned by the City. The evidence does not preponderate against this finding.

The evidence as found by the Trial Court shows that the Manchester Avenue right-of-way was dedicated, was accepted by the City, and has not been abandoned by the City. As such, the Gentrys could not gain title to the Manchester Avenue right-of-way by virtue of adverse possession.

With regard to the Gentrys' claim that they acquired title to the Manchester Avenue right-of-way by acquiescence, the Gentrys rely upon the case of *Roane County v.*

*Anderson County*, 14 S.W. 1079 (Tenn. 1890) for the proposition that "the doctrine of acquiescence applies in cases involving government entities." This case, however, is easily distinguished from the case now before us on appeal.

To begin, we note that *Roane County v. Anderson County* was a case wherein one county sued another county. *Id*. Thus, *Roane County v. Anderson County* involved two governmental entities opposing one another, not an individual landowner opposing a governmental entity as in the case now before us on appeal. Given this crucial fact, we decline to accept a blanket assertion that the doctrine of acquiescence applies to all cases involving government entities. Furthermore, the doctrine of acquiescence applies to boundary line disputes between adjoining land owners. *E.g., Roane County v. Anderson County*, 14 S.W. 1079 (Tenn. 1890); *Bingham v. Doles*, No. W2002-00104-COA-R3-CV, 2002 Tenn. App. LEXIS 749 (Tenn. Ct. App. Oct. 17, 2002), *no appl. perm. appeal filed*. The case now before us on appeal, however, involves a public right-of-way and not a boundary dispute between adjoining land owners. Finally, with regard to this contention the Trial Court specifically found:

> In the case at bar, the Gentrys have not shown that there existed any dispute or doubt as to the location of the lines of the parties by the Gentrys, the McCains and the City and/or their predecessors. Nor have the Gentrys established that there existed mutual recognition and knowledge of the line as asserted by Gentrys in Manchester Avenue. The evidence does not prove title by acquiescence.

The evidence does not preponderate against these findings made by the Trial Court. The Gentrys' argument that they hold title to the Manchester Avenue right-of-way by virtue of acquiescence is without merit.

The Gentrys also claim that they obtained title to the Manchester Avenue right-of-way by virtue of a previous lawsuit styled *Gentry v. Moore*. In *Gentry v. Moore*, the Trial Court entered its Memorandum Opinion and Order on September 21, 1999 finding and holding, *inter alia*:

> Mr. Gentry wanted the court to declare that the Gentrys own all of the unopened area known as Manchester Avenue, at least to the end of his lot. Mr. Gentry testified that he told Ms. Betterton that he owned Manchester Avenue. Further, he testified that the fee owner of the unopened Manchester Avenue property at one time was Chattanooga Estates Company. That firm later sold its interest to Joe McDonald. Mr. Gentry told Joe McDonald once that he claimed ownership of Manchester Avenue. Evidently Mr. McDonald's

-11-

response could not be repeated in the courtroom. The City owns a sewer located under Manchester Avenue. The court cannot declare the Gentrys the owners of the fee because the persons, other than Mr. Moore, who might assert an ownership interest in Manchester Avenue are not parties to this lawsuit. The court can declare that the Gentrys have the right to use the entire right of way from their driveway to Glen Road as well as the rest of Manchester Avenue lying northwesterly above their driveway. Mr. Moore also has the right to use the paved roadway between Glen Road and his driveway. He can also use the area east of the paved roadway (eastern side) adjacent to Lot 19-C.

The normal rule of law regarding claims of ownership to the land used as a street is set forth in 23 Tenn. Juris., Streets and Highways, § 45 as follows:

> "An abutting owner is presumed to own the fee to the center of the highway, in the absence of something to indicate the contrary.…"

Here, the other parties who could assert an ownership interest are not before the court and their rights cannot be determined or terminated. It is obvious that the Gentrys "have more rights" or a "higher and stronger" claim than does Mr. Moore and the Gentrys, as opposed to Mr. Moore, would be declared the fee owner if such were the only choice. However, there are other possibilities.

It is the court's position that the only decree, regarding ownership interests and rights over Manchester Avenue, that can be entered binds only the Gentrys and Mr. Moore. It is a fundamental rule of law that a person, to be deprived of his property, must be brought before the court and given the opportunity to present his/her/its case. See Article I, Sections 8 and 17 of the Tennessee Constitution. Neither Joe McDonald, The Chattanooga Estates Co., the City of Chattanooga, nor any other property owners whose land abuts Manchester Avenue are parties to this suit. The court cannot declare their rights or lack of rights unless they are before the court and have an opportunity to present their case.

Although no disrespect is meant to the Gentrys, it is conceivable that a person could claim part of Manchester Avenue. Even if the claim "looks good and smells good," there is no one to test the claim unless those persons who would be adversely affected by the claim have the right to present their case and contest the granting or ratification of the claim. Thus, the court cannot grant the Gentrys their fee claim in this lawsuit devoid of parties other than

Mr. Moore.

After entering the September 21, 1999 order in *Gentry v. Moore*, the Trial Court entered an order on January 21, 2000 finding and holding, *inter alia*:

> After the case was completed, Mr. Terry Kilgore of Hopkins Surveying Group, Inc. called the court. Mr. Kilgore was in the process of resurveying Mr. Moore's property in accordance with the court's order and had a couple of questions. The court has discussed these questions with Mr. Kilgore and the attorneys for both parties and received their input.
>
> Based upon the court's earlier ruling, it is **ORDERED**:
>
> 1. That, regardless of the rule of law applicable to these type cases, the court's memorandum opinion and order filed September 21, 1999 does not apply to Lot 19D because the owner(s) of Lot 19D was <u>not</u> before the court and did not participate in the case;
>
> 2. The Gentrys are declared to be the owners of all the unimproved land, that is, all non-paved areas between the parties' driveways and the paved area where the driveways join adjacent to Manchester Avenue, ….

In their brief on appeal, the Gentrys argue: "The facts clearly establish, as between [the Gentrys] and all other individuals, [the Gentrys] have acquired title to Manchester Avenue by adverse possession. [The Gentrys] believe this is what Chancellor Brown held in his Memorandum and Orders of 1999 and 2000."

The Gentrys are wrong. In *Gentry v. Moore*, the Trial Court clearly, expressly, and correctly held that "the other parties who could assert an ownership interest are not before the court and their rights cannot be determined or terminated…." The Trial Court recognized that there were possibilities with regard to ownership and rights to Manchester Avenue other than those presented by the parties in *Gentry v. Moore*. As discussed fully above, the Manchester Avenue right-of-way is a public right-of-way and it is not possible for the Gentrys to have acquired title by adverse possession against the City. Furthermore, we note that the Trial Court in *Gentry v. Moore* determined ownership as to the land between the Gentrys' and Mr. Moore's driveways "adjacent to Manchester Avenue" only, not ownership or rights as to the Manchester Avenue right-of-way. This argument is without merit.

We find and hold that the Trial Court did not err in finding that the Gentrys do

not hold title to the Manchester right-of-way. We further find that with regard to the request for a temporary injunction, the Trial Court did not apply an incorrect legal standard or reach a decision which is against logic or reasoning that causes an injustice. As the Trial Court found and held that the Gentrys had no ownership interest in the property in question here, a decision we have affirmed, the Trial Court's denial of injunctive relief was not error. We, therefore, affirm the Trial Court's June 12, 2009 Memorandum and Order.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, James W. Gentry, Jr., and Margaret A. Gentry, and their surety.

_____
D. MICHAEL SWINEY, JUDGE